CHARLES A. McGARTY vs. COMMONWEALTH.

Suffolk.    October 3, 1950. — November 6, 1950.

Present: QUA, C.J., RONAN, SPALDING, & WILLIAMS, JJ.

*Error, Writ of. Constitutional Law*, Due process of law. *Practice, Criminal*, Medical expense, Investigation of mentality of defendant.

The issuance of a writ of error upon a judgment for a capital offence lies in the sound discretion of a single justice of this court; and abuse of such discretion is the question before this court upon review of a refusal by the single justice to issue the writ.

There was no abuse of discretion by a single justice of this court in refusing to issue a writ of error upon a judgment for a capital offence where it appeared that the alleged error upon which the petition for the writ was based was the same as one of the alleged errors assigned on a previous appeal under G. L. (Ter. Ed.) c. 278, §§ 33A–33G, as amended, and that this court had then decided the point adversely to the petitioner.

After the defendant in an indictment for murder had been examined under G. L. (Ter. Ed.) c. 123, § 100A, as amended by St. 1941, c. 194, § 11, by two competent and impartial psychiatrists who had reported to the court that in their opinion he was "not suffering from any mental disease or defect which would affect his criminal responsibility," he was not unconstitutionally deprived of due process of law by denial of a motion that, "being without funds, [he] be allowed to employ two . . . psychiatrists at the expense of the Commonwealth so that he . . . [might] properly defend himself."

PETITION for a writ of error, filed in the Supreme Judicial Court for the county of Suffolk on June 5, 1950.

The petition was denied by *Lummus, J.*, and the petitioner alleged exceptions.

*J. S. Seligman*, for the petitioner.

*H. P. Fielding*, Assistant Attorney General, for the Commonwealth.

QUA, C.J.    The petitioner alleges in his petition that he has been tried and convicted of murder in the first degree and has been sentenced to pay the death penalty as provided by law.  The only error set forth as the basis of his petition is the denial by the judge of the trial court of a motion by

the petitioner that he "being without funds, be allowed to employ two (2) psychiatrists at the expense of the Commonwealth so that he may properly defend himself against the crime as charged by the Commonwealth." It is alleged that this denial violated the petitioner's constitutional rights. The petition came on for hearing before a single justice of this court upon the sole question whether or not a writ of error should issue. The writ was denied, and the petitioner excepted.

For more than a century the issuance of a writ of error upon a judgment for a capital offence has rested in the sound discretion of a single justice of this court. Rev. Sts. c. 112, § 16. *Commonwealth* v. *Sacco*, 261 Mass. 12, 16. The present statute reads in part, "A writ of error upon a judgment for a capital crime . . . [and certain other felonies] shall not issue, unless allowed by a justice of the supreme judicial court after notice to the attorney general or other attorney for the commonwealth; but a writ of error upon a judgment in any other criminal case shall issue as of course . . . ." G. L. (Ter. Ed.) c. 250, § 11. In the *Sacco* case it was indicated that the "plain intention of the Legislature" was "to discourage and prevent unnecessary delay." The defendant has as of right an entirely different and adequate remedy for errors in the proceedings by a seasonable appeal under G. L. (Ter. Ed.) c. 278, §§ 33A–33G. Ordinarily the single justice ought to issue the writ if it seems to him that there is any reasonable possibility that error of substance has occurred which can be corrected thereby, and ought to refuse it where the petition seems to him to have been brought without reasonable cause and to have been intended merely for delay. That the same points can be taken by appeal in accordance with G. L. (Ter. Ed.) c. 278, §§ 33A–33G, is not necessarily decisive against the issuance of the writ. *Commonwealth* v. *Marsino*, 252 Mass. 224, 227–228, and cases cited.[1] It follows from what has

---

[1] In civil cases on the other hand, a writ of error will not lie where appeal is available. *Perkins* v. *Bangs*, 206 Mass. 408, 416. *Commercial Credit Corp.* v. *Flowers*, 282 Mass. 316, 321.

been said that where the action of the single justice in refusing to issue a writ of error in a capital case is brought to the full court for review the question is whether the single justice abused his discretion.

There was no abuse of discretion in this case.

1. This court has already reviewed the proceedings leading to the sentence of this petitioner on appeal by him with assignments of error in accordance with the regular procedure provided by G. L. (Ter. Ed.) c. 278, §§ 33A–33G. *Commonwealth* v. *McGarty*, 323 Mass. 435.[1] His first assignment of error on that appeal was the denial by the trial judge of the same motion the denial of which is the foundation of his present petition for writ of error. The petitioner in his brief on his appeal, of which we take judicial notice (*Culhane* v. *Foley*, 305 Mass. 542, 543), relied upon G. L. (Ter. Ed.) c. 277, § 56,[2] as authorizing the judge to allow the motion and took the position that while he did not contend that this statute contained a "mandate" to the court to allow it, nevertheless the "gravity" of the case "warranted" its allowance in order to safeguard the petitioner's constitutional rights, so that it was the "bounden duty" of the court to allow the motion, "and that failure to do so constituted abuse of judicial discretion and prejudicial error." This court dealt with the alleged error in the denial of this motion in the fifth paragraph of its opinion. *Commonwealth* v. *McGarty*, 323 Mass. 435, at page 437. We there held that even if the trial judge could have granted the motion, the matter was discretionary, and we concluded with the statement, "We find no error in the denial of the motion." The opinion, however, does not discuss constitutional law. It appears, therefore, that in his appeal the petitioner asserted the same alleged error which he now asserts; that, whatever the language in his brief may mean,

[1] Subsequent proceedings in Federal courts on a petition for habeas corpus, which was dismissed without prejudice, are reported in *McGarty* v. *O'Brien*, 85 Fed. Sup. 415, and in *McGarty* v. *O'Brien*, 180 Fed. (2d) 987, certiorari denied, 339 U. S. 966.

[2] This statute makes provision for approval by the trial judge and payment by the county of reasonable expenses incurred by counsel assigned by the court to defend a person indicted for murder.

he argued the point upon such grounds as he saw fit, and that this court decided the point against him upon grounds which it deemed sufficient. A court of appeal does not commonly reconsider on a later appeal a matter previously decided on an earlier appeal. *Peterson* v. *Hopson*, 306 Mass. 597, 599–600, and cases cited. We are of opinion that for the reasons above stated, even if the single justice could have granted the writ, which we need not decide, his refusal to grant it was at least within the limits of a sound and reasonable judicial discretion, and we so hold.

2. But in the circumstances of this case we are unwilling to end this decision at this point. The petitioner has been sentenced to be executed. The wording of his brief upon his appeal is so obscure that it is seriously doubtful whether he advanced any argument on constitutional grounds, and this court did not deal with the question from a constitutional standpoint. If, however, upon full consideration of the argument now made by the petitioner it appears that the constitutional point is without merit, that fact alone will demonstrate either that the single justice acted within the limits of discretion in refusing to grant a writ which, if granted, would plainly have been barren of result, or at least that there was no harmful error in refusing the writ.

In our opinion the constitutional point is wholly without merit. This Commonwealth has made special provision for the mental examination of all persons indicted for capital offences (and some others) through the department of mental health. By G. L. (Ter. Ed.) c. 123, § 100A,[1] as amended by St. 1941, c. 194, § 11, it is provided that the department "shall cause such person to be examined with a view to determine his mental condition and the existence of any mental disease or defect which would affect his criminal responsibility. . . . The department shall file a report of its investigation with the clerk of the court in which the trial is to be held, and the report shall be accessible to the court, the probation officer thereof, the district attorney

---

[1] This statute is widely known as the Briggs law.

and to the attorney for the accused." In *Commonwealth* v. *Devereaux*, 257 Mass. 391, at page 396, this court said of this statute, "The examination is required in order that no person so indicted may be put upon his trial unless his mental condition is thereby determined to be such as to render him responsible to trial and punishment for the crime charged against him, and that he has no mental disease or defect which interferes with such criminal responsibility." In the same case on page 396, this court said, "It is a matter of general knowledge that there are in the service of the Commonwealth under this department persons eminent for special scientific knowledge as to mental diseases. The examination under the statute, therefore, may fairly be assumed to have been made by competent persons, free from any predisposition or bias and under every inducement to be impartial and to seek for and to ascertain the truth." See also *Commonwealth* v. *Gray*, 314 Mass. 96, 104–105. The petitioner was examined under this statute. The report of the two examining psychiatrists appears in the original record which was before this court in *Commonwealth* v. *McGarty*, 323 Mass. 435. It dealt in detail with the personal and family history of the petitioner as well as with his physical and mental condition. The conclusion of the examiners was that the petitioner was neither feebleminded nor insane; that he knew the difference between right and wrong; that antisocial tendencies which he had presented since early childhood warranted "a diagnosis of psychopathic personality"; that he had been "so classified"; but that in the opinion of the examiners "this prisoner . . . [was] not suffering from any mental disease or defect which would affect his criminal responsibility." This report was "accessible" to the attorney for the present petitioner. While it seems never to have been decided whether a defendant can put such a report in evidence at his trial, if he considers it sufficiently favorable to him, there was no reason why the petitioner could not summon the two examining psychiatrists as witnesses at the trial at the expense

of the Commonwealth under G. L. (Ter. Ed.) c. 277, § 66, and as it is evident that they had already formed opinions, they could have been required to give them without the payment of expert fees. *Stevens* v. *Worcester*, 196 Mass. 45, 50–51, 56. The truth is, of course, that the petitioner did not desire the report of these impartial and competent experts or their testimony because their views were not favorable to him. His position therefore is not only that the Commonwealth was obliged to furnish competent expert opinion, but also that, after having furnished the opinions of two competent and wholly impartial experts, the Commonwealth was obliged to supply his counsel with the means of obtaining, if possible, two other experts who would contradict the impartial experts already furnished. And he is forced to contend that refusal to do so was the denial of such a fundamental and necessary element of a fair trial as to amount to a denial of due process of law. *Snyder* v. *Massachusetts*, 291 U. S. 97, 105. *Palko* v. *Connecticut*, 302 U. S. 319, 325. *Bute* v. *Illinois*, 333 U. S. 640, 659. In our opinion such a contention goes far beyond the implications of recent decisions of the Supreme Court of the United States in the line of cases, beginning with *Betts* v. *Brady*, 316 U. S. 455, many of which are cited in *Allen* v. *Commonwealth*, 324 Mass. 558, 562.[1] Acceptance of such a contention would unwarrantably hamper the inherent power of the States to construct their criminal procedures in such fair and reasonable forms as they deem best adapted to secure a prompt and efficient administration of the criminal law, just to both the accused and the States. On principle the petitioner's contention is insupportable.

Each of the two lines of reasoning hereinbefore set forth leads to the result that the petitioner's exceptions must be overruled. We reach that result on both grounds.

*Exceptions overruled.*

---

[1] A more recent case is *Quicksall* v. *Michigan*, 339 U. S. 660.